IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AISHA S. HUNTER, | CIVIL ACTION |
| Plaintiff, | |
| v. | NO. 20-2334 |
| TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA, | |
| Defendant. | |

MEMORANDUM OPINION

Defendant Trustees of the University of Pennsylvania move for summary judgment on Plaintiff Aisha Hunter's claims for race and age discrimination, retaliation, and hostile work environment in violation of 42 U.S.C. §1981, Title VII of the Civil Rights Act of 1964 (Title VII), the Age Discrimination in Employment Act (ADEA), and the Pennsylvania Human Rights Act (PHRA). For the reasons that follow, Defendant's motion will be granted.

I.  BACKGROUND

The relevant facts, as supported by the summary judgment record, are as follows.[1] In 2014, the University of Pennsylvania hired Aisha Hunter (Plaintiff), who is Black and was in her forties at the time the incidents she complains of occurred, as an Assistant Director of Financial Aid. Within two years, Hunter had a new boss, Elaine Papas Varas, a White woman who was in her sixties at the time of the incidents of which Plaintiff complains. Plaintiff alleges that Papas

---

[1] Not included in the factual background or relied upon below are Plaintiff's various allegations, from her deposition and in her post-discovery declaration, that are not based on her personal knowledge or are inadmissible hearsay. *See, e.g.,* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Bouriez v. Carnegie Mellon Univ.*, 2005 WL 2106582, at *4 (W.D. Pa. Aug. 26, 2005) ("It is clear that the party offering the evidence must demonstrate that it could satisfy the applicable admissibility requirements at trial before the evidence may be used on summary judgment."); *Bowdoin v. Oriel*, 2000 WL 134800, at *3 (E.D. Pa. Jan. 28, 2000), *aff'd*, 254 F.3d 1077 (3d Cir. 2001) ("[W]e are to disregard statements in affidavits which are not based on personal knowledge or those portions that contain inadmissible hearsay.").

Varas discriminated against her because of her race and age, and retaliated against her once she complained.

Plaintiff first became concerned when, shortly after joining the department, Papas Varas reclassified all "Assistant Directors" in the office, including Plaintiff, to "Senior Financial Aid Counselors." Although the salary, benefits, and duties of the newly-minted Senior Financial Aid Counselors remained the same, levels of management were added above their position on the organization chart. While the change applied indiscriminately to employees of all races and ages, most were over forty.

Plaintiff's next issue stems from her May 2017 performance evaluation with Papas Varas. Memories differ as to what was said in that meeting. Plaintiff says Papas Varas criticized her demeanor—referring to her as "angry" then, when Plaintiff asked for details, Papas Varas told her that she was angry while walking to the printer/copier machine. Plaintiff interpreted the criticism as an invocation of the stereotype of an angry Black woman. Papas Varas denies that any of this occurred. The written evaluation discussed during the meeting did not include the word "angry." However, in the section entitled "Working Collaboratively" and in response to the prompt "[d]escribe how the staff member demonstrates competency and how the staff member should further develop this competency," Papas Varas wrote, in relevant part:

> Communication of difficult or strange information requires a soft hand which you are very able to utilize. Understanding of the current status quo will help in moving the needle. A positive attitude through verbal and non-verbal communications will have a huge impact on behavior with students and fellow colleagues.

Plaintiff complained in writing to Human Resources about this evaluation. While Plaintiff's letter discussed the "angry" comment made during the meeting, it made no reference to race or racial bias. Plaintiff informed Papas Varas that she had made a complaint, but Human Resources did not follow up with Papas Varas.

Next, Plaintiff interprets as ageist a comment made by Papas Varas to the effect that Papas Varas did not know what to do with Plaintiff because she was "on the fence" between the old people and the new people in the office. Plaintiff's age in fact sat at the midpoint between the younger people in the office who were, on average, in their early thirties and the older people in the office who were in their mid-to-late fifties. Papas Varas denies making the comment.

Then, Plaintiff says she was interested in and/or applied for several promotions within the Financial Aid Department between November 2017 and April 2019 but did not get them.

Next, Plaintiff describes an instance when, in May 2019, she stopped by the office on her day off with her teenage daughter and young son. When asked, the daughter told one of Plaintiff's co-workers that she wanted to be a lawyer when she grew up. The co-worker then commented something to the effect of: it is good you will be a lawyer one day because your brother will need you to loan him money and bail him out of jail. Plaintiff was shocked and offended by this comment in that she interpreted it to imply that her son, a young Black boy, was destined to be a criminal who would have to rely on his sister financially. Human Resources investigated. The co-worker explained that she was thinking of her own rambunctious brother when she made the statement, rather than the child's race. She maintained that the comment was something her mother used to say to her, in jest, and she repeated it to Plaintiff's daughter without considering the implications of saying such a thing to a young Black child. The upshot was that the co-worker was warned that any further such incidents could be cause for termination and was required to undergo sensitivity training, which she completed. Papas Varas, who was not there when the incident occurred, nor was she involved in choosing the level of discipline, agrees that the statement was "incredibly inappropriate," reflected "poor, poor judgment," and "absolutely" should have been reported to Human Resources.

Plaintiff also reported an incident where an employee from outside the financial aid

department—who was a close friend—walked into her office and called her "low," "low down dirty," and "nothing" and then refused to leave her office when she demanded he do so. Although Plaintiff felt threatened, unsafe, and frightened by his actions, she concedes that he did not say anything about race or age. Papas Varas was not present, but heard about the incident afterward. She is not aware of what, if any, disciplinary actions were taken against this person as he does not work in her department. He has since voluntarily separated from the university.

## II. SUMMARY JUDGMENT STANDARD

"[S]ummary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (internal quotations marks and citations omitted). "A genuine issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of [the] burden of proof." *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007). In ruling on a summary judgment motion, a court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotations marks and alterations omitted). However, "unsupported assertions, conclusory allegations, or mere suspicions" are insufficient to create an issue of fact and defeat summary judgment. *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp.2d 490, 493 (E.D. Pa. 2010) (citing *Williams v. Borough of W. Chester*, 891 F.2d 458, 460 (3d Cir. 1989)). A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III. DISCUSSION

### A. Discrimination and Retaliation Claims

4

Plaintiff brings claims for age and race discrimination and retaliation under Section 1981, Title VII, ADEA, and the PHRA. Her claims are centered around her failure to obtain six different promotions between November 2017 and April 2019. Because these claims are analyzed under similar legal frameworks, they will be considered together as appropriate. *See, e.g., Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002) (precedent interpreting Title VII, ADEA, and/or PHRA is equally relevant to interpretation of each statute); *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009) ("[T]he substantive elements of a claim under section 1981 are generally identical to the elements of an employment discrimination claim under Title VII").

Where, as here, a claim does not rest on direct evidence, the claims are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (applying *McDonnell Douglas* to ADEA claims); *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 268 (3d Cir. 2010) (same for Section 1981 claims). Under the first step of this framework, the employee bears the initial burden of establishing a *prima facie* case by a preponderance of the evidence. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). In the second step of the *McDonnell Douglas* framework, if the employee makes out a *prima facie* case, "the burden of production [then] shifts to the defendant to offer a legitimate non-discriminatory [reason] for the adverse employment action." *Id.* at 426 (internal quotation marks and citation omitted).[2] Finally, "the burden of production [shifts] back to the plaintiff to provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is

---

[2] "This burden is 'relatively light,' and the employer need only 'introduc[e] evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006) (alteration in original) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 773 (3d Cir. 1994)).

5

merely a pretext for discrimination." *Id*.  To do so, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764.  In seeking to discredit the employer's proffered reasons, "the plaintiff cannot simply show that the employer's decision was wrong or mistaken," but rather must show that the reason was a pretext for invidious discrimination.  *Id.* at 765.  This burden is carried by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder *could* rationally find them unworthy of credence." *Id.* (internal quotation marks and citation omitted).

A point of distinction amongst Plaintiff's statutory claims are the various limitations periods.  Under Title VII and ADEA, a plaintiff must bring a claim within 300 days of the allegedly discriminatory action.  *See Cunningham v. Albright Coll.*, 2020 WL 7640192, at *3 (E.D. Pa. Dec. 23, 2020).  Under the PHRA, the claim must be filed within 180 days of the alleged discriminatory action.  *Funayama v. Nichia Am. Corp.*, 2011 WL 1399844, at * 12 (E.D. Pa. April 13, 2011) (applying 180-day limitation period to PHRA employment discrimination claim).  On the other hand, Section 1981 has a four-year statute of limitations period.  *See* 28 U.S.C. § 1658.

> 1. ***Age Discrimination Claims***

Plaintiff's age discrimination claims are brought under the ADEA and the PHRA. Plaintiff unsuccessfully applied for four job opportunities that form the basis of these claims: Deputy Director of Financial Aid (filled June 2018); Associate Director of Financial Aid (filled January 2018); another Associate Director of Financial Aid position (filled November 2018); and

a Program Development Manager for a One Stop Shop position (filled April 2019).  Because Plaintiff's charge of discrimination is dated September 4, 2019, the ADEA statute of limitations bars claims for discriminatory conduct that occurred before November 8, 2018.  Thus, Plaintiff is precluded from proceeding on all but the November 2018 Associate Director and the One Stop Shop positions.  The PHRA statute of limitations bar date of March 8, 2019 precludes all but one of her claims—the One Stop Shop position.

Plaintiff has established a *prima facie* case for her two timely age discrimination claims, which requires her to show that she: 1) is at least forty years old (this is not contested); 2) suffered an adverse employment decision; 3) was qualified for the position in question; and, 4) was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive.  *Burton,* 707 F.3d at 426.  She was qualified for both jobs.[3]  With respect to the 2018 Associate Director of Undergraduate Aid position: she applied, a White male who was under forty got the job and started work in mid-November.  As for the One Stop Shop position, she applied, but a Black woman in her thirties was chosen over her.

Nevertheless, Plaintiff's age discrimination claims fail to pass muster at the pretext analysis stage.  Defendant meets its relatively light burden of demonstrating legitimate, non-discriminatory reasons for selecting other candidates over Plaintiff.  The Associate Director of Undergraduate Aid position called for a Bachelor's Degree, five to seven years of student aid experience, described duties including "manag[ing] the day to day operation of undergraduate financial aid staff" and "[m]anag[ing] counseling staff and assistant directors for undergraduate team," and indicated that "[e]xperience in managing both federal and institutional methodology

---

[3] Defendant's contention that the candidates chosen were more qualified goes towards the pretext analysis below, but does not defeat Plaintiff's claim at the less onerous *prima facie* stage.  *See Willis*, 808 F.3d at 644 ("This Court has indicated the *prima facie* case is not intended to be rigid, mechanized, or ritualistic." (internal quotation marks and citation omitted)).

7

is a plus." A search committee, which did not include Papas Varas, interviewed the candidates. The person selected had over ten years of experience in financial aid, had a Bachelor's Degree and was enrolled in a Master's program, and had management experience. He scored a four out of five in every category and a five in "Relevant Background/Special Skill Set," and the comment box on his evaluation indicated he was a "[s]uperb candidate" for the position and that he had "management experience and team building with collaboration skills." Plaintiff scored a combination of twos and threes on the same evaluation criteria, and the comment box on her evaluation form noted that she lacked management experience.

  As for the One Stop Shop position, Plaintiff was interviewed for this position by the same panel as the other candidates. The chosen candidate scored the highest in the interview pool, whereas Plaintiff ranked third. The interviewers—which again did not include Papas Varas—noted that the woman selected had a "strong background related to implementing and operating" a One Stop Shop at her previous employer and therefore "could start working prepared to kick off the project." In addition to interviews, the candidates submitted written materials. Plaintiff's written submission included typos, grammatical errors, and incomplete sentences and ideas. Plaintiff was informed that there were concerns regarding her writing style during the application process. Defendant has thus, through its explanation of the hiring process and selection criteria, met its burden of production that its hiring decisions were legitimate and non-discriminatory.

  Accordingly, the burden shifts back to Plaintiff to demonstrate that the proffered reasons for selecting these other candidates were "either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Fuentes*, 32 F.3d at 764. As the Third Circuit has explained, to demonstrate pretext in an age discrimination case the plaintiff must show that age was a determinative factor in the adverse employment action. *See Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009); *Palmer v. Britton*

*Indus., Inc.*, 662 F. App'x 147, 150 (3d Cir. 2016) ("It was not enough to show that his age was *a* factor motivating the decision to fire him.  Instead, [plaintiff] had to point to summary judgment evidence supporting an inference that his age had a 'determinative influence' on the decision" (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009))).  On this record, Plaintiff cannot establish that age had a determinative influence on the selection process.  Plaintiff points to two instances where Papas Varas exhibited what Plaintiff interpreted as age bias—her decision to reclassify "Assistant Directors" to "Senior Financial Aid Counselors," most of whom were over forty, and her comment about Plaintiff being "on the fence" between the new people and the old people in the office.  Yet, Plaintiff does not connect either to the hiring decisions at issue, temporally or otherwise.  The restructuring of the department was at least two years before the relevant hiring decisions, and Plaintiff does not provide the time frame in which Papas Varas made her "on the fence" comment.  Moreover, Papas Varas was concededly not on the panel or selection committee that interviewed and evaluated the candidates, including Plaintiff.  Accordingly, Plaintiff has failed to identify evidence from which a reasonable jury could conclude that Defendant's decision-making process was infected by impermissible age bias.[4]

### 2. Race Discrimination Claims

Plaintiff next claims that she was racially discriminated against in four instances where Defendant failed to promote her to the following positions: the Director of Compliance (2017), the Functional Financial Aid Lead (2018), the Deputy Director, and the November 2018

---

[4] The crux of Plaintiff's argument is that she was the superior candidate for the positions because she had completed her Master's Degree and had taken the lead on a variety of projects.  However, the difference in the candidates' relative qualifications here is not indicative of discrimination.  It is not enough that Plaintiff disagrees with Defendant's decision; instead, she must show that the decision not to promote her was based on age.  *See Fuentes*, 32 F.3 at 765 ("[T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.").

Associate Director of Financial Aid.[5] The first three claims fail at the *prima facie* stage and the last at the pretext analysis. The elements of a race discrimination claim for failure to promote are that: 1) the plaintiff belongs to a protected class; 2) she applied for and was qualified for a job in an available position; 3) she was rejected; and, 4) after she was rejected, the position stayed open and the employer continued to seek applications from similarly qualified individuals. *Bray v. Marriot Hotels*, 110 F.3d 986, 990 (3d Cir. 1997).

Turning first to Plaintiff's allegation regarding her failure to obtain the Director of Compliance role in 2017, in short, any claims based on this position are not viable in that Plaintiff was aware of yet did not apply for this position. In fact, Plaintiff testified that she "disregarded it." Even if Plaintiff felt discouraged by what she believed was a biased or unfair application process, her failure to make a reasonable attempt to demonstrate her interest in this role is fatal to her discrimination claim. *E.E.O.C. v. Metal Serv. Co.,* 892 F.2d 341, 348 (3d Cir. 1990) (explaining that a plaintiff in a discriminatory hiring or failure to promote case may establish a *prima facie* case despite the failure to formally apply "as long as the plaintiff made every reasonable attempt to convey his interest in the job to the employer."); *McCutchen v. Sunoco, Inc.,* 2002 WL 1896586, at *5 (E.D. Pa. Aug. 16, 2002), *aff'd*, 80 F. App'x 287 (3d Cir. 2003) (finding that "[s]imply pointing to the practice of [defendant] to not post job openings is insufficient" to show a plaintiff made a reasonable effort to express an interest in a position).

Plaintiff also claims that the failure to hire or promote her to fill the Functional Financial Aid Lead position was racially discriminatory. But this position was never created and filled as

---

[5] Plaintiff brings these claims, as well as her retaliation claims, pursuant to Title VII, Section 1981, and the PHRA. Because all her claims are timely under the four-year limitations period pursuant to Section 1981, there is no need to reach Defendant's timeliness arguments with respect to the Title VII and PHRA discrimination and retaliation claims as these fail for the same reasons as Plaintiff's Section 1981 claims addressed hereafter. *See Brown*, 581 F.3d at 181-82.

10

anticipated. Instead, Defendant spread the duties across a larger team. Plaintiff has no *prima facie* case for discrimination where the position at issue was never actually created, and consequently Plaintiff never applied for and was not rejected for this hypothetical role. *See Young v. Temple Univ. Hosp.*, 359 F. App'x 304, 310 (3d Cir. 2009) (holding that the failure to create a new position and promote plaintiff to that role is not an actionable discrimination claim).

Next, Plaintiff alleges that the failure to promote her into the role of Deputy Director was racially motivated. Plaintiff cannot establish a *prima facie* case for discrimination because she has not established that she was qualified for this role. Deputy Director is the second-highest ranking position in her department, which is three levels above her current role on the organization chart. The position called for management experience, which Plaintiff concedes she did not have. To the contrary, the record shows that Plaintiff's lack of management experience was a concern when she applied for a position a level *below* that of Deputy Director. The candidate selected for this role had previously managed a staff of more than fifteen people.

Finally, Plaintiff claims that the failure to promote her to the Associate Director position in 2018, as discussed *supra*, was racially discriminatory. While Plaintiff has a *prima facie* case because she applied for and was rejected from this position, for which she was qualified, in favor of a White candidate, this claim fails for much the same reasons as her ADEA claim. Plaintiff has failed to identify admissible evidence from which a jury could find that Defendant's well-documented reasons for hiring a different qualified candidate were a pretext for racial discrimination. Plaintiff relies heavily on Papas Varas' characterization of Plaintiff's demeanor as "angry." However, this single comment was made in May 2017 whereas the Associate Director position was filled in November 2018, about a year and a half later. Moreover, Plaintiff was evaluated by a selection committee that did not include Papas Varas.

Plaintiff's scattershot of other workplace grievances, many of which do not involve race, do not save her claim.  Plaintiff complains that she was asked to train the chosen candidate to fill the 2018 Associate Director Position: but that an experienced employee would help train an external hire unfamiliar with internal policies and procedures, even one above her in the organization, does not necessarily permit an inference of racial discrimination.  Plaintiff repeatedly argues that Defendant failed to adhere to its hiring policy when it selected candidates from outside the University of Pennsylvania rather than promoting internally:  this contention is, however, belied by the record.  The internal hiring policy merely states that "Hiring Officers are encouraged to consider competitively qualified, current University staff members to fill vacant positions."  Not only is this policy permissive rather than mandatory, it is undisputed that Defendant *did* consider Plaintiff before ultimately selecting an external candidate.  Nor is the Defendant's unilateral correction of a pay discrepancy suggestive of racial discrimination or animus: the record shows that Human Resources and Compensation discovered a pay disparity around November 2017, which affected Plaintiff and other employees, at least some of whom were Black.  It is undisputed that Human Resources and Compensation informed Papas Varas of the discrepancy and a voluntary adjustment was made.[6]  There is nothing in the record, setting aside Plaintiff's assertion of her viewpoint, that this indicates racial hostility.

3.     ***Retaliation Claims***

Summary judgment shall also be granted on Plaintiff's claim that the repeated failure to promote her was in retaliation for her complaint about racial discrimination.  The elements of a

---

[6] Plaintiff's circuitous argument that the pay increase was used to mollify her after she was denied promotions, perhaps to keep her from complaining, is both speculative and unsupported by the record. While Plaintiff is not clear on the timeline, despite carrying the burden, the record suggests that Defendant offered her the pay increase in November 2017, before she was rejected for any of the promotions.

*prima facie* case of retaliation are that: 1) the plaintiff engaged in a protected activity; 2) the employer took a materially adverse action against her; and, 3) there was a causal connection between the protected activity and the employer's action. *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006). The relevant protected activity is Plaintiff's complaint regarding Papas Varas' use of the word "angry" during her 2017 performance review, which complaint she submitted in writing to Human Resources and made verbally to Papas Varas. Although Defendant disputes that this was a complaint about race, drawing all inferences in Plaintiff's favor, a jury could reasonably credit Plaintiff's version of the evaluation meeting and her subsequent complaint about racial stereotyping.[7]

However, on this set of facts, there is no causal link shown between Plaintiff's complaint and the Defendant's decisions not to promote her. The Third Circuit has taken a flexible approach to causation, explaining that "a plaintiff may rely upon a broad array of evidence" to establish a causal link between the protected activity and the adverse employment action. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 283-84 (3d Cir. 2000). As guidance, the plaintiff may point to an unusually suggestive temporal proximity between the complaint and the adverse employment action, a pattern of antagonism or retaliatory animus after a complaint, an employer's inconsistent explanation for taking an adverse employment action, or "other evidence gleaned from the record as a whole from which causation can be inferred." *Id.* at 281-82; *see also Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017). The ultimate question is whether plaintiff's "proffered evidence, looked at as a whole, may suffice to raise the inference" of causation. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997).

---

[7] Plaintiff also complained about racial discrimination after her co-worker made the comment about her children in May 2019 which complaint she reiterated to the EEOC in September 2019. However, she does not allege any adverse employment actions after those reports.

That standard is not met here.  Plaintiff made her complaint about Papas Varas calling her angry in May 2017.  Thereafter, she applied for and was denied the Deputy Director position, the Associate Director of Undergraduate Financial Aid position twice, and the One Stop Shop position.[8]  Nevertheless, there is no unusually suggestive temporal proximity.  Plaintiff first applied for the Deputy Director position and Associate Director of Undergraduate Financial Aid positions in November 2017, about six months after her complaint.  The latter two positions she sought were not filled until November 2018, a year and a half after the complaint, and April 2019, almost two years after the complaint.  *Compare Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir. 1989) (finding causal link where plaintiff was fired two days after EEOC complaint), *with Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 331 (3d Cir. 2015) (finding no unusually suggestive temporal proximity where three months passed between harassment complaint and termination), *and Andreoli v. Gates*, 482 F.3d 641, 650 (3d Cir. 2007) ("We find that the five-month time period between [plaintiff's] informal complaint . . . and the first alleged adverse action . . . is, without additional evidence, insufficient to raise an inference of causation.").

In the absence of suggestive temporal proximity, courts look for a pattern of antagonism following a complaint.  *Robinson v. Se. Pa. Transp. Auth*., 982 F.2d 892, 895-97 (3d Cir. 1993) (finding a causal link where plaintiff was subjected to a "constant barrage of written and verbal warnings," pretextual disciplinary actions, and inaccurate notations in his permanent record, "all of which occurred soon after plaintiff's initial complaints and continued until his discharge." (internal quotation marks omitted)).  Plaintiff identifies no such pattern here.  She has never been disciplined, she has met expectations on her performance reviews, her salary has been increased

---

[8] Because Plaintiff did not apply for the Director of Compliance position and the Functional Financial Aid Lead position was never created, neither can be considered an adverse employment action for purposes of a retaliation claim.

every year, and she remains employed by Defendant.  The only pattern is that Plaintiff was considered for and denied promotions in favor of other qualified candidates.  Nevertheless, Plaintiff has not shown that Defendant gave inconsistent reasons for selecting the other candidates over her.  The summary judgment record is replete with evidence of the candidates' qualifications and the non-discriminatory interview process consistently followed by Defendant.  Moreover, Plaintiff does not argue that the various people who interviewed and evaluated her for promotions were even aware of her complaint regarding racial discrimination.  *See Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 196 (3d Cir. 2015) ("The plaintiff, however, cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted.").  Essentially all Plaintiff offers is her own assumption that because she complained about race discrimination she must have been rejected because of her complaint.  With nothing in the record to bolster this inferential leap, Plaintiff has no *prima facia* case for retaliation.

      **B.**    **Hostile Work Environment**

Finally, Plaintiff alleges that she was subjected to a racially hostile environment.  To prevail on a hostile work environment claim under Title VII and Section 1981, a plaintiff must establish that: 1) she suffered intentional discrimination because of a protected status; 2) the discrimination was severe or pervasive; 3) the discrimination detrimentally affected the plaintiff; 4) the discrimination would detrimentally affect a reasonable person in like circumstances; and, 5) the existence of *respondeat superior* liability.  *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013); *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017) (applying the Title VII hostile work environment framework in Section 1981 case).  The totality of the circumstances is considered in deciding whether harassment was sufficiently severe or pervasive to create a hostile work environment.  *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

The Supreme Court has directed courts to look to "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998) (internal quotation marks and citation omitted).  By contrast, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 788 (internal quotation marks and citation omitted).

Plaintiff's hostile work environment claim fails because she does not identify severe and pervasive discriminatory conduct based on her race.  The three arguably race-based incidents or comments in the summary judgment record, taken together, fail to establish a severe or pervasive hostile work environment attributable to Defendant.  As to the first incident, granting the inference that Papas Varas' negative critique of Plaintiff's demeanor relied on a racial troupe about angry Black women, a single offensive utterance or isolated incident (unless extremely serious) does not support a claim for a hostile work environment.  *See Faragher*, 524 U.S. at 787-88.  Second, the comment made by Plaintiff's co-worker about her son was handled promptly by Defendant's Human Resources Department and the co-worker was reprimanded.  Papas Varas agreed that the comment was incredibly inappropriate, reflected poor judgment, and that Plaintiff absolutely should have reported it.  Thus, Plaintiff cannot establish that Defendant was negligent in controlling the racial climate of the workplace.  *See Huston v. Procter & Gamble Paper Prod. Corp.*, 568 F.3d 100, 104 (3d Cir. 2009) (explaining that where the harassing employee is the victim's co-worker, rather than a supervisor, the employer is liable only if it was negligent in controlling working conditions).

As for the third and final incident, Plaintiff raises no more than mere speculation that the person confronting her and calling her "low," "low down dirty," and "nothing" had anything to

do with her race.  The speaker, who is also Black, did not reference race during the confrontation.  In fact, Plaintiff testified in her deposition that she does not understand what provoked this incident.  At the summary judgment stage, Plaintiff needs more than rank speculation about a possible connection to her complaints about racism to establish severe or pervasive race-based workplace harassment.  *Schaar*, 732 F. Supp.2d at 493 ("[T]he non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion" (citation omitted)).  A reasonable jury could not conclude from two isolated incidents involving racial stereotypes, two years apart, and only one of which is attributable to a supervisory employee, that Plaintiff was subjected to a racially hostile work environment.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment will be granted.  An appropriate order follows.

**April 15, 2021**                                                              **BY THE COURT:**

/s/Wendy Beetlestone, J.

_____

**WENDY BEETLESTONE, J.**